And the next case is People of the State of Illinois v. David Stumpf. Mr. Evers, whenever you're ready to proceed, please do so. Good afternoon, Your Honors. It's a beautiful day out there. We're talking about the case of People v. David Stumpf. He was convicted of unlawful possession of a controlled substance, specifically cocaine. And the word you'll hear me saying a lot during this oral argument is trace. It was a trace amount of cocaine. What that means, we're not quite sure. Because the state did not feel a need to really explain how much a trace is. This case came out of a search of a house which contained the owner, Michael Bull, David Stumpf, who lived there in the bedroom, and Stephen Fry, who lived around, and Jessica Ratcliffe, who was kind of attached to Stephen Fry. The police, in the search of the house after they had come in and arrested Stephen Fry and Jessica Ratcliffe, saw a number of items of paraphernalia about the house. So they developed and sent the search of the entire house. And in that search, they found what they had said was a black plastic case containing four bottles in Mr. Stumpf's room. I read over the description of where that plastic case was, and I couldn't figure out where it was found. I originally thought it might have been in the closet of the bedroom. But then in writing the brief, I looked at what was testified to by the officers, and I couldn't figure out where they said it was found, besides it was found in this bedroom. What it was covered by, how it was put in a closet, found somewhere, we don't know. That it was Mr. Stumpf's, we don't know. But you deny that the defendant admitted that the vial was his. Nothing in the record where he concedes that the vial was his. Not the cocaine, but the vial. I don't believe anywhere that you will find a specific statement that this is my vial. Now, the state will point out that Mr. Stumpf, in talking with the police at the scene, said that all the paraphernalia in his room was his. Except you have to remember that this is during a kind of chaotic situation. He knows that there is some kind of paraphernalia. He admits that he had been a user in the past, that he had not used any drugs for a long period of time. And so his statement that the paraphernalia was his does not necessarily mean that he knew that that black plastic case was in the bedroom, or saying that it was his, or that the vials contained within that was his. That is just something that you have to assume from the little testimony that you get from the police. What about the state's contention that he had tried to dispose of the vial or the paraphernalia? Well, they just say that he admitted that he was trying to dispose of some of the paraphernalia that he knew was in his room because he had been a user in the past. And they want to say that he was madly trying to dispose of the paraphernalia, but he didn't dispose of some of the things that were on the bed and on the table beside the bed stand, besides the bed, that Stephen Fry said were things that he was using, that he and Jessica Ratcliffe were in David's room. He was doing cocaine, and she was going to pick up some heroin, and he didn't like needles, and he left. So the idea that he was madly removing this paraphernalia, well, that would be one of the first things he could have seen and taken care of, but that was left, the syringe was left on the bed some way, and the idea that there was real ability to get to all of the paraphernalia is not really borne out by the facts either. And I would like to get back to the word trace, and there's no showing in the record about what this means. There's no showing of a photograph showing that it was coated, that there were little lines, that it was easily seen. So knowing that he is possessing cocaine because of this trace amount, I believe, is very problematic. The chemist who did the analysis for the state in determining that it was cocaine said it was such a trace amount that she had to wash it out with this alcohol-based liquid just to be able to get it out and determine that there was some amount of cocaine, and we don't know what that amount was. Those are a minimum amount that doesn't make a crime? The chemist says could not possibly determine any kind of way. Is there a minimum amount that doesn't make any amount a crime? A minimum amount would be a crime if you know about it, and if you're knowingly possessing it to do something with it. But I would like to point out that when you pull out dollar bills, get dollar bills, get $20 bills, we know that cocaine is on our currency. Because you're knowing that there might be cocaine on currency means that you're committing the class 4 felony of possession of cocaine because they might be able to test the currency in your pocket with showing that it has cocaine on it. You can pull it out, look at it, and say I don't think I see anything there. But again, we don't have anything in the record that shows that Mr. Stump ever pulled out that file and looked at it and said, you know, I can't see a white powder in there. That probably is cocaine in there. That is just not demonstrated by the record. And again, it gets back to knowing possession, whether he actually possessed it, and just because it's in his room doesn't mean that he's in constructive possession. All of those concepts are interrelated because it requires him to know that those things are within his room. Now, Mr. Fry testified at trial and said that he had found this plastic case in the house. He doesn't testify he found it in David Stump's room. He doesn't testify where he found it. He says he used it and he said he was a cocaine user and it would not be unusual for him to use it for cocaine. And that after he was finished using it, he put it in Mr. Stump's room and he doesn't really say, as I recall the record, where he put it in Mr. Stump's room, whether it was hidden or not. So what we're left with is one witness testified at trial that Mr. Stump really did not know that he had put this vial back which had this great amount of cocaine in it, but he never testified or told Mr. Stump that he had borrowed it, that he had used it, that he had put cocaine in it, and that it might be laying around for somebody later to find. And there's a long line of cases in which courts have said that the jury just can't ignore the unimpeached, undisputed testimony of a witness. The state will point out that he's impeached by various convictions, that he might be taking the fall because he admitted that he had a larger amount of cocaine in the house. All those things are true, but you get back to his testimony and what the state is being able to prove beyond a reasonable doubt. Let me ask you this. It seems inconsistent to me for him to claim that he didn't know that there was cocaine in the vial, but he was trying to dispose of the vial. Well, again, I don't believe that he or his attorney or anybody admits that he was specifically trying to dispose of the vial. What the police officer testified to is that he admitted that he had paraphernalia and he was trying to dispose of the paraphernalia. Never did the police show him this case and the vial and say, is this one of the things you were trying to dispose of? And if he was trying to dispose of it, then I would say that it would be somewhere outside of his room, a trash can somewhere. And so consequently, I don't believe that there is any kind of admission that he knew about this. Consequently, we'd ask your honors to reverse. May it please the court. My name is Timothy James Ting and I represent the people of the state of Illinois. Your honors, in my time before you today, I will show you why the defendant's conviction should be affirmed. Now, I first want to start out by responding to what Justice Wexton had stated concerning whether it was inconsistent for the defendant to be disposing of paraphernalia at the same time that he didn't understand that there was a trace amount of cocaine. And first and foremost, whether it was a trace or whether it was 30 grams is absolutely irrelevant. The fact that there was cocaine in that paraphernalia is enough to sustain the conviction. Now, the defendant would have this court believe that there's trace amounts of cocaine on various items, innocuous items, such as dollars. But the key difference here is that dollars are not specifically designed for cocaine use. This vial was. Moreover, we have to consider the context of the record. Not only was the defendant trying to dispose of these items where we had a hypodermic syringe found lying on the bed in plain view, as you find on page 111 of the record, as well as a wooden box that contained a bent spoon, which Special Agent Lutz testified to on pages 114 and 116 of the record. When spoons are bent in such a manner, in addition to a pocket knife which also contained a trace amount of cocaine, such indications show that, and I quote, nine times out of ten when they're bent like that, they are used for narcotic use. Now, that being said, we have the defendant admitting that he owned the narcotic paraphernalia, admitting that he was trying to, in his own words, dispose of it. And we have as well the testimony of Mr. Fry who says that he had access to the room. What I'd like to point out to this court is its ruling in People v. Scott, which the defendant does not respond to. His existence is further evidence of the defendant's knowledge and control. In that case, this court found that a metal box was contained in the defendant's room. Now, he was in an apartment that was shared with another individual. However, the metal box had some of the defendant's clothes in it and was found in his cabinet. That metal box contained various items of paraphernalia. We have a similar case here. The defendant stated that it was his room. It was designated as well as Mr. Mole, the owner of the house, stating that the room was indeed the defense. The only indication that there was other access by other individuals is from Stephen Fry. As the defense counsel has pointed out, Mr. Fry has been convicted of several various felonies as well as a prior unlawful controlled substance charge. Therefore, he was impeached by his felony abuse. Furthermore, the consistencies with Mr. Fry's testimony show one thing. Mr. Fry, when he was interviewed by the police, as you can find on 157 and 158 of the record and 169 and 171 of the record, never stated that any of the paraphernalia in Mr. Stumps, the defendant's room, was his own. So when Fry was first picked up, he never claimed that any of that paraphernalia was his own. It is only now, once he was on trial, when he had already been convicted of his crime and sentenced of his crime, that he conveniently forgot that that paraphernalia in that room was the defendant's. Mr. Fry's testimony should not be given any credence because of that. Moreover, Your Honor, there are two different elements. There's actual possession or constructed possession and knowledge. And we've gone over a bit of the knowledge. But as far as actual possession, I want to first and foremost stress to this court that, in closing arguments, defense counsel stated that possession was an uncontested issue. They repeatedly focused the jury's attention on the knowingly aspect. And it says on pages 182 and 183 of the record, as well as 185, the issue you have to address here is the issue of did Mr. Stump knowingly possess cocaine? And again, the defense states, and I quote, again, concentrate what the knowingly aspect is. Again, the defense states in its closing, yes, the issue – or then the state responds in its rebuttal. Yes, the issue is knowingly. Did he knowingly possess it? The possession element of this crime wasn't even contested at the trial level. And the reason it wasn't contested is because the defendant stated it is my paraphernalia. We cannot come any closer to understanding that than his own words. And he didn't just say he was trying to hide it or he was just getting out to look at it for fond memories. No, he said he was trying to, and I quote, dispose of it. Is that the only thing he was trying to dispose of, this vial with this cocaine in it, or was he disposing of other things? No, he was disposing of various items. And the defendant has stated that we have no indication from the record that he was madly trying to remove these items. But the indications from the record show other things. We have a hypodermic needle on top of his bed in plain view. We have a wooden box that's on his bedside table. We have the vials inside the closet. We have various items in various parts of the room. Moreover, when we look at the context of the record on pages 8, 9, and 90 of the record, it shows that at first the defendant didn't want to come out of his room. He didn't even want to be there. Then when the police finally got him out of his room, they said, where's Mr. Frye? And the defendant tried to attempt to conceal Mr. Frye's identity. It was only after – and you can find this on page 90 of the record – it was only after he was stricken with obstructing justice charges that the defendant then stated, okay, Mr. Frye's in the basement. His actions of being secretly – of trying to expose his paraphernalia as well as trying to conceal Mr. Frye's identity show his tendency, his ability to – and his intent. Actions speak louder than words. Far too often we overcomplicate things with legalese and overanalysis. But when we have a defendant here who was in his room, which designated as his own, admitted the paraphernalia use, and admitted that he was trying to dispose of it, and willfully tried to conceal Mr. Frye's identity to the police, what more is there? I will point this more specifically. So if you're a former drug user and I move in with you and I go into your room and hide some drugs and you don't know it and it's found, then you're guilty? Absolutely not. Absolutely not. But what we have to understand here is that the context of the record doesn't just show merely that a former drug user were in the same house, and the defendant somehow didn't know about Mr. Frye's use of his body. What we have here is the defendant stating he owned the paraphernalia. The only information, the only testimony which shows that anyone else had access to the defendant's room was from Mr. Frye, the person with four felony convictions and one of the prior, one of those namely being an unlawful controlled substance charge. Moreover, I would point this court to the case of People v. Alexander, where the defendant ran into a bedroom and disposed of cocaine when he noticed police outside his friend's apartment. The Alexander court held, and I quote, under the circumstances, the jury could have fairly inferred from the evidence that the defendant had the requisite knowledge to prove actual possession. We have both here. The defendant was disposing of the paraphernalia, and the defendant admitted that it was his paraphernalia. Again, Mr. Frye had an opportunity to state that the paraphernalia in the defendant's room was his own when he was interviewed by the police the next day. Mr. Frye did not do so. The fact that he did so at trial several months afterwards indicates that not only did he just conveniently forget, but rather that he was attempting to help the defendant in convicting this crime. And I would last point this court to the standard review here. Sufficiently the evidence, it is well settled. It's in the light most favorable to the prosecution. Even if there is an argument to be made for the defense, the fact of the matter is this court is not here to retry the defendant. Rather, it is to give all reasonable inferences to favor the prosecution. What we have here is a defendant who admitted owning the paraphernalia, and as found in several places on the record, 131, 174, there was abundance of narcotics through the house. The defense certainly knew that there was narcotics in the house. The questionable credibility of the only defense witness in Stephen Frye on pages 162 to 163 of the record, the defendant's own statements that he was trying to dispose of the paraphernalia and the fact that he was frantically cleaning out his room. All of these indications, all these facts, when put in light most favorable to the prosecution, lead to one conclusion, that the jury, a rational trier of fact, could have found the defendant had possession and knowledge of the uncontrolled substance. Is there any corroborating evidence linking the defendant to the contraband other than constructive possession? Your Honors, I would submit to you that… Have the premises. The defendant stating that the paraphernalia in his room was his own is actual possession, and that is what the Alexander case did. When a defendant disposes of paraphernalia, that act shows exclusive dominion and control over it. And the fact that there's trace amounts in that possession of those paraphernalia shows actual possession. The constructive possession is shown by the defendant's actions as well as the fact that… I see my time is up. I thank you for your time, Your Honors. Any rebuttals? Yes, Your Honor. Looking at Mr. Frye, the State likes to use the word conveniently for a guy. But this was a trace amount, new and very small. We don't know when he put this plastic case back. He's in a house that the police have found 5.7 grams of cocaine in his room, and 5.7 grams of cocaine is much more memorable than a trace amount. There's no showing that the police that night or the next day or sometime when they were talking with Frye pulled out this black case with that bottle and said, We want you to focus on this. Did you do anything with this? And so Frye says that at the time of the arrest, he told the police that everything in the house that had drugs was his. They deny that. They testify that he did not say that. That is a matter of credibility, and that is a problem. But he does say that he told the police that, and there's no showing that the police specifically directed him to this black plastic case with the vials in it and asked him specifically whether that was his, whether he had used it, whether there might be some cocaine in it, and somebody who has used a vial in the past and with the small amount of cocaine that would be in it, it's not unusual, it would not be unreasonable for him not to think about it at all. The state would like to talk about, again, the defendant saying, Mr. Stump saying that all the paraphernalia was his. Well, I have lots of boxes in my house that I haven't looked in for years. And if the police asked me whether everything in my place was mine, I would say yes. I would not qualify. The state here wants Mr. Stump to have to have qualified and said everything that I know about is in my room as mine. I mean, people have come into my residence. If they had left something, I haven't seen it, I don't know about it. If I don't know about it, then I'm not going to make that qualification. That's just not the way people think and talk to the police in times like this. They were in this arrest mode. It's a chaotic situation. They ask him some questions, and his natural reaction is to say, yeah, all the paraphernalia in my room is mine, and not qualify it and later say, but things that might have been put there by other people that I don't know about, that's not mine. Consequently, relying upon that is an infirm foundation for the state. And it comes back to the knowing part. And that is the most important concept for this court to focus upon. What he knew, whether he knew there was this trace amount, and again, we don't know what that trace amount was. We don't know whether he ever looked at that file. We don't know whether he ever contemplated it and said there's some kind of white powder in there. It must be cocaine, and I'm going to keep it because it might be useful later. What use it could be for later, I don't know. Certainly it's not anything that was ever going to be used getting high. It certainly wasn't enough to do anything for selling. Certainly not anything useful. And ultimately, it's the state's position that it had to be his. It had to be more. And so, therefore, because we cannot prove what amount there was in that more, we're going to convict him of this Class IV felony of a trace amount. And we urge your honors to reject that position, reverse the conviction. If there are any questions. No questions. Thank you. Thank you. We'll take the matter under advisement. I appreciate each of your arguments. The remaining cases on the docket for this afternoon have been continued at the request of the parties. We'll resume oral arguments.